**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**
_____

MEDTRONIC, INC.,
MEDTRONIC SOFAMOR DANEK, INC.,
and MEDTRONIC SOFAMOR DANEK
USA, INC.,

      Plaintiffs,

v.                               **MEMORANDUM OF LAW & ORDER**
                                  Civil File No. 05-1387 (MJD/JGL)

MARC M. PETERMAN and
ABBOTT SPINE INC.,

      Defendants.
_____

Wayne S. Moskowitz, Jonathan S. Parritz, William Z. Pentelovitch, and Mary R. Vasaly, Maslon Edelman Borman & Brand, LLP, counsel for Plaintiffs.

Alan L. Kildow and Sonya R. Braunschweig, Oppenheimer Wolff & Donnelly, LLP, and Derek G. Barella and James F. Hurst, Winston & Strawn, counsel for Defendants.
_____

**I.   INTRODUCTION**

On July 22, 2005, this Court granted Plaintiffs' Motion to Remand [Docket No. 8] and stated that a Memorandum of Law would follow. [Docket No. 23] Accordingly, the Court issues this Memorandum of Law.

1

## II.  FACTUAL BACKGROUND

### A.  Facts Related to the Underlying Lawsuit

Plaintiff Medtronic, Inc., is a Minnesota corporation, headquartered in Minnesota.  Plaintiff Medtronic Sofamor Danek, Inc., Medtronic's subsidiary, is an Indiana corporation with its principal place of business in Tennessee.  Plaintiff Medtronic Sofamor Danek USA, Inc., also Medtronic's subsidiary, is a Tennessee corporation with its principal place of business in Tennessee.  Defendant Marc Peterman was an engineer working for Medtronic's Sofamor Danek from February 2003 until June 23, 2005, in Memphis, Tennessee.

When he began his employment with Medtronic, Peterman signed a Medtronic Employee Agreement containing a covenant not to compete.  On June 23, 2005, Peterman submitted his written resignation to Medtronic, informing Medtronic that he had accepted a position with Defendant Abbott Spine, Inc.  Abbott Spine is a Delaware corporation with its principal place of business in Texas.

On July 1, 2005, Plaintiffs filed this lawsuit in the District Court for the Tenth Judicial District, Anoka County, Minnesota, alleging that Peterman breached the Medtronic Employee Agreement, alleging that Abbott Spine tortiously interfered with the contract, and seeking declaratory and injunctive relief.  Also on that date, Plaintiffs filed an <u>ex parte</u> motion for a temporary

restraining order. On July 5, the state court granted the temporary restraining order. Also on July 5, Plaintiffs served Peterman with the Summons and Verified Complaint.

On July 12, Defendants removed this action to federal court based on diversity jurisdiction. Defendants have moved for remand and to extend the temporary restraining order. Defendants assert that federal diversity jurisdiction does not exist because the parties are not completely diverse. Specifically, Defendants assert that at the time this lawsuit was commenced, July 5, 2005, Peterman was a citizen of Tennessee. Defendants claim that Peterman was a citizen of Texas.

### B.    Facts Related to Peterman's Domicile

Peterman worked for Medtronic in Tennessee from February 2003 through June 23, 2005. Defendants admit that Peterman was, during much of this time, a Tennessee citizen, with his domicile in Tennessee. A process server personally served Peterman at his home address in Tennessee on July 5, 2005, at 9:33 p.m. Additionally, the process server handed Peterman copies of other court documents at his Tennessee home on July 7, 2005, at 7:21 a.m.

According to Defendants, Peterman accepted the Abbott Spine job in Austin, Texas, on April 21, 2005. On that date, he began working with Abbott's Corporate Relocation Department to arrange his move to Austin. On May 9,

Peterman listed his Memphis house for sale. On June 2, he liquidated his Medtronic Employee Stock Purchase Plan account, with the intention of moving the funds to an investment vehicle in Austin. On June 20, Peterman and his wife bought a new wireless service with telephone numbers with the area code for Austin, Texas. Because Peterman did not have a land line, his only telephone service was the wireless service with the Texas area code. On June 22, Peterman signed a contract for the sale of his Memphis home and received approval for financing for a new house in Austin. He and his wife began packing their personal belongings into boxes.

On June 23, Peterman resigned from Medtronic. From June 24 through June 27, Peterman and his wife continued to house hunt in Texas. On June 26, Peterman wrote an earnest money check to secure the purchase of a new home on Ravey Street in Austin, Texas. The Ravey Street home was new construction, so move-in was not scheduled until mid-July 2005. Thus, Peterman made arrangements for a temporary place to stay in Austin from July 7 through July 12. On June 28, Peterman signed the contract to purchase the Ravey Street house.

From July 1 through July 4, Peterman and his wife were in Pennsylvania visiting Peterman's family for the Fourth of July. From July 5 through July 7, Peterman was at his Tennessee home to supervise the packing of their belongings. He supervised professional movers pack his personal property into boxes and

onto a moving truck.  During this time, Peterman was served with the Summons and Verified Complaint in this case.

The Petermans have two cars, one registered in Texas and the other registered in Tennessee.  The Petermans have family in Texas, and Peterman and his wife regularly traveled to Texas to visit relatives.

## III.   DISCUSSION

### A.   Standard

Remand to state court is proper if the district court lacks subject matter jurisdiction over the asserted claims.  28 U.S.C. § 1447(c).  In reviewing a motion to remand, the Court must resolve all doubts in favor of a remand to state court.  In re Bus. Men's Assurance Co. of America, 992 F.2d 181, 183 (8th Cir. 1993).

In order to remove a case to federal court based on diversity jurisdiction, complete diversity must exist at the time of the commencement of the lawsuit in state court and at the time of removal.  Associated Insur. Mgmt. Corp. v. Ark. Gen. Agency, Inc., 149 F.3d 794, 796 (8th Cir. 1998); Minn. Mining & Mfg. Co. v. Kirkevold, 87 F.R.D. 317, 320 (D. Minn. 1980).  Under Minnesota law, an action is commenced against a particular defendant when the summons is served on that defendant.  Minn. R. Civ. P. 3.01.  Peterman was served with the Summons on July 5, 2005.

"[T]he burden falls upon the party seeking the federal forum, if challenged,

to demonstrate by a preponderance of the evidence that the parties are citizens of different states." Sheehan v. Gustafson, 967 F.2d 1214, 1215 (8th Cir. 1992). "Citizenship and domicile are synonymous for purposes of § 1332." Janzen v. Goos, 302 F.2d 421, 424 (8th Cir. 1962). "[O]ne may have only one domicile at a time and a domicile once established persists until a new one is acquired." Id. at 425. "[A] change in domicile requires only the concurrence of (1) physical presence at the new location with (2) an intention to remain there indefinitely, or the absence of any intention to go elsewhere." Holmes v. Sopuch, 639 F.2d 431, 433-34 (8th Cir. 1981) (citations and footnote omitted). "When these two facts concur, the change in domicil[e] is instantaneous." Bruton v. Shank, 349 F.2d 630, 633 (8th Cir. 1965) (citation omitted).

### B.     Whether Peterman Was Physically Present in Texas

In this case, the parties do not dispute that by July 5, Peterman intended to make Texas his domicile at some point; however, they dispute whether he was physically present in Texas on July 5.

The Court concludes that Peterman was not physically present in Texas when he was served on July 5. Although Peterman had accepted a job in Texas, had contracted to sell his Tennessee home, and had contracted to purchase a home in Texas, he had not yet carried out his intention to move his domicile to Texas. See Hendry v. Masonite Corp., 455 F.2d 955, 956 (5th Cir. 1972) (holding

that, although defendant had accepted a job in Illinois and intended to become an Illinois citizen, he was still a Mississippi citizen when he had yet to physically change his domicile).  Peterman's household furnishings were still in Tennessee on July 5; he was overseeing the movers pack them.  Peterman could not move into his Ravey Street house until mid-July, and could not even move into his temporary location in Austin until July 7.  Finally, Peterman was physically in his Tennessee home when he was served on July 5, and again on July 7.  See Ness v. Dean Wittier Reynolds, Inc., 677 F. Supp. 861, 864 (D.S.C. 1987) (holding that defendant in the process of moving from South Carolina to Arkansas was a South Carolina resident on June 27 because 1) his household furnishings were not yet in Arkansas on June 27, but were instead "on their way;" 2) defendant could not move into his Arkansas house until June 29; and 3) defendant and his family were still in South Carolina when he was served on June 27).  Cf. Graff v. Qwest Communications Corp., 33 F. Supp. 2d 1117, 1120 (D. Minn. 1999) (holding that plaintiff had relinquished his Colorado domicile and established a Minnesota domicile after he had "left Colorado and arrived in Minnesota").

   Although Peterman clearly intended to change his domicile to Texas, he had not actually done so when he was served at his Tennessee home on July 5.  Because he remains a citizen of Tennessee until he establishes his new domicile in Texas by physically moving to Texas, diversity jurisdiction does not exist.  This

matter is remanded to the District Court for the Tenth Judicial District, Anoka County, Minnesota.  Plaintiffs' Motion to Extend Temporary Restraining Order is denied as moot.

Based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

Plaintiffs' Motion to Extend Temporary Restraining Order [Docket No. 12] is **DENIED AS MOOT**.

Dated:  July 26, 2005                                s/ Michael J. Davis
                                                                                             Judge Michael J. Davis
                                                                                             United States District Court